## SYKES v. STATE.

No. A-11416. July 9, 1952.

Rehearing Denied Aug. 6, 1952.

(246 P. 2d 379.)

Rinehart & Rinehart, El Reno, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. William Boyd Sykes was charged in the county court of Canadian county with the unlawful transportation of intoxicating liquor, was tried before a jury, convicted, and the punishment left to the court, who assessed a a fine of $50 and costs, and adjudged that defendant be confined in the county jail for a period of thirty days. Appeal has been perfected to this court.

The sole question presented for reversal of the conviction is whether or not there was such a variance between the point of origination and termination of the transportation, as set out in the information and as proven on trial, as would entitle defendant to a new trial.

The sole evidence, except an affidavit used in behalf of defendant by agreement of the county attorney, was that of the sheriff, a deputy sheriff, the day jailer, and the undersheriff. The officers were all in a car cruising around about 12:30 of the morning in question. They testified that they were near the "Y" southeast of El Reno when they saw a car drive into the defendant's driveway, and then come out again and start north. The proof shows that the defendant's home was one-fourth of a mile north of the "Y" and on the east side of the road, being South Shepard Street. Defendant started driving north without lights, and the sheriff commenced an investigation and drove after the blind car. The officers all testified that they recognized the car as one belonging to the defendant. Undersheriff Woods testified positively that they had a search warrant to search this car, but that it was not served by reason of fast developments. The officers testified that as they followed the car in question three bottles were thrown from the right hand side of the car. The car finally pulled over to the side of the highway, or street, and stopped. The sheriff and one of his deputies got out, but about the time they reached defendant's car he drove off and left the officers. They again started in pursuit of defendant's car and stopped him the second time as he proceeded on north just after he had gone over a viaduct, which was about one-fourth of a mile north of where they saw him throw out the bottles. They searched his car but found no intoxicating liquors. The defendant Sykes was driving the car and a man by the name of Terry Taylor was riding with him, sitting to the right of the driver.

The officers arrested the defendant for reckless driving, and two of the deputies took him on to jail. The evidence discloses that defendant was subsequently convicted of this charge, which disposes of any question in this case as to why the officers commenced speeding after defendant. The sheriff and one of his deputies returned to the point where they noticed the bottles being thrown

out, and found three pints of whiskey by the side of the paved street, or highway, on the dirt shoulder, and the within charge was thereafter filed. The whiskey was positively identified and introduced in evidence at the trial.

The defendant at the beginning of the trial filed a motion for continuance, because of the absence of Terry Taylor, who was riding in the car at the time of the arrest, and according to defendant's affidavit was at the time of trial in the Armed Forces. The affidavit of defendant was admitted without objection of the state as the testimony of the witness; it being stated that the witness would testify that there was no whiskey in said automobile at any time the same was being followed by the officers or from the time it left the home of the defendant; that such witness was a passenger in defendant's car and no liquor was thrown therefrom and would testify positively that no liquor was thrown from said car by either defendant or such witness.

As indicated, it is the contention of defendant that there was a fatal variance in that he was charged with transporting the liquor from one definite point to another, the latter being one-fourth of a mile from where the last bottle was alleged to have been transported, the argument being that since the county attorney knew the point at which the transportation ceased, he should have set that out, and knowing the liquor was only transported three-fourths of a mile, he should have amended, and not stated that it was transported one mile,—this constituting a fatal variance.

In this connection, we find that the information is verified by the sheriff of Canadian county, Lloyd E. Palmer. It must be assumed that he advised the county attorney that the whiskey, in question was transported one mile along South Shepard street, as set out in the information, instead of three-fourths of a mile, as developed by the proof. The county attorney attempted to get the sheriff to estimate the distance of the conveyance on direct examination at trial, as follows:

"Q. How far would you say it was from the point of the beginning when you first took in behind the car that came out of Sykes' place out there, between that point, and the point where you found the last pint of whiskey, the pint of whiskey the most extreme north? A. Right south of Mr. Money's driveway, laying close to a telephone pole. Q. How far would that be? A. About across the courtroom, maybe a little farther. Q. There were no bottles north of that? A. No. The last bottle was right where he stopped the first time I stopped him. Q. The last bottle was thrown out, and then he took off again before you got there? A. No, he stopped, and I started walking toward him, me and Hayward, and before I got to his car, he took off . Q. Were you in front of your lights at that time? Did you have your car lights on? A. Yes, the lights were on. Q. You were sounding the siren all the time? A. Yes."

On cross-examination by defense counsel, witness stated:

"Q. You say that is a mile, that it was transported for a mile? A. No, sir. Q. About how far? A. About three-quarters, I would guess, from his place down there. That isn't three-quarters from where they started throwing it out. Q. I am talking from the time you first started following him when you first saw him. A. I would say nearly three-quarters of a mile down there."

We find no evidence in the record where witness was asked if he had advised the county attorney that the point where he found the last bottle of whiskey was approximately three-quarters of a mile north of the commencement of the transportation, rather than one mile, as alleged. In other words, there is no evidence in the record that shows that the county attorney was aware that the distance charged was to the point where the car was finally stopped, rather than to the point where the last bottle of liquor was thrown from the car. The allegation was in good faith.

For the benefit of the state it may be stated, as a practical matter, that although the argument of defense counsel at time of trial as to variance might have seemed to the county attorney facetious, nevertheless, on the face of it, the contention, in view of the facts developed, merited serious consideration, and the issue could have been eliminated as to what proved to be the only ground for appeal, if the county attorney had asked leave to amend his information by interlineation, instanter, to conform to the proof; that is, to the actual facts. One can never make a mistake by doing that. This court has held that an information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the accused, and that no amendment shall cause any delay in the trial unless for good cause shown by affidavit. Herren v. State, 72 Okla. Cr. 254, 115 P. 2d 258. As a general rule it is better to be overcautious rather than not cautious enough. Now, then, the issue remains, and we must decide whether or not there was a fatal variance.

In approaching the problem presented, we must keep in mind a statement by Barefoot, J., in Leer v. State, 83 Okn. Cr. 291, 176 P. 2d 512, 514, and approved in later opinions of this court, where it is said:

"The statute, 37 O.S. 1941 §1, et seq., which prohibits conveying intoxicating liquor from one point or place in the state to another is probably the most drastic statute in the enforcement law. It is not incumbent upon the state to prove 'intent' to violate the law when so charged, and the simple act of transporting from one point to another constitutes a technical violation of the statute. This applies to one point in a city or town to another point therein, or from one point on the public highway to another point thereon. With this rigid law the statute should be strictly construed to the end that innocent persons may not suffer by its application, and the state should be required to prove the material allegations of the information."

But the immediate question is, what constitutes a variance in a criminal case? In Hatley v. State, 72 Okla. Cr. 69, 113 P. 2d 396, it is said:

" 'A variance in a criminal case is an essential difference between the accusation and the proof. A variance is not material unless it is such as might mislead the defense or expose a defendant to being put twice in jeopardy for the same offense.' "

See, also, Herren v. State, supra; Brashears v. State, 38 Okla. Cr. 175, 259 P. 665; Woods v. State, 22 Okla. Cr. 365, 211 P. 519; Tiger v. State, 54 Okla. Cr. 202, 16 P. 2d 889.

The information alleged that the conveyance commenced:

"In a Northerly direction on South Shepard Street from a point approximately one-fourth (¼) mile North of the intersection of U. S. Highway No. 66 and U. S. Highway No. 81, said intersection being approximately One (1) mile Southeast of the City Limits of El Reno, Canadian county, Oklahoma, to a point approximately one and one-fourth (1¼) miles North of said intersection in said county and state * * *."

From this allegation it is apparent that the transportation took place on a north and south street coming out of El Reno to the south and known as Shepard street, onto the intersection of U. S. Highways 66 and 81, approximately one mile southeast of the city limits.

The evidence disclosed that that part of Shepard street described in the information running north from the intersection of U. S. Highways 66 and 81 for one mile was formerly a part of the old Highway 66 and 81. We find no variance here as there was no evidence that the street or roadway was not then known as South Shepard although outside the city limits of El Reno.

The information alleges and the evidence shows that the transportation commenced one-fourth mile north of the intersection in question, and the proof developed that it continued north on Shepard, for approximately three-fourths of a mile where the three pints of liquor were thrown from the car, but the pursuit continued one-fourth of a mile on north along Shepard and across a viaduct; thus the officers actually travelled one and one-fourth miles from the highway intersection, but the liquor was transported but three-fourths of a mile, when the allegation in the information alleges one and one-fourth miles north of the intersection, or that the transportation continue one mile from defendant's home on Shepard north, there being a variance of one-fourth mile, as the liquor, according to the evidence, was thrown out three-fourths of a mile from point of beginning and none was found in the car at the point where vehicle was finally stopped.

Applying the test above announced, was the variance material? In other words, was defendant misled by the information in preparing his defense? If so, how he was misled has not been pointed out, and we cannot imagine how he could have been misled. But could the variance expose the defendant to being put twice in jeopardy for the same offense?

Here was a case of hot pursuit, defendant travelling one mile from commencement of travel on a highway, that is to say, from a known point to a known point on a named highway, the information and evidence agreeing there, but disposing of his liquor by throwing from the car three-fourths of a mile from point of beginning, and not conveying to point where finally stopped.

How could the error in the information setting out the transportation as being the distance of travel of the car rather than the intervening point where liquor actually expelled from the car, subject the defendant to a second prosecution for the same offense? Such has not been suggested, and we cannot imagine how defendant could ever be subjected to a second charge of transportation where the pursuit in question would be involved.

In the Hatley case, supra, the material facts were quite similar to the facts in the within case. The information charged the defendant therein with transportation of whiskey " 'from a point unknown to the informant in Beckham County, Oklahoma, to a point one mile north and three miles west of Elk City,' " whereas the proof developed that the officers apprehended defendant *one mile north and one mile west of Elk City*, and defendant attempted to break the bottles with one hand while driving the car with the other. Although there was a variance in the point alleged in the information as to where the liquor was conveyed to and the proof at trial of point to which conveyed, of two miles, this court held, under all the facts developed, that the variance was not material.

Ordinarily, an opinion should end at the point as here, particulary in a misdemeanor case where by statute, Tit. 20 O.S. 1951 §47, we are not required to render written opinions in such cases. But counsel has set out two principles of law that have been applied by this court in instances in the past to liquor transportation cases, and that would support counsel's argument for reversal here.

In treatment we would first notice other pronouncements by this court before considering the two points raised.

It is well settled that a person cannot be convicted of a charge of unlawful transportation of intoxicating liquor by showing that he carried the same from one room to another in his home, Proctor v. State, 8 Okla. Cr. 537, 129 P. 77, or from his home into his yard, Glass v. State, 36 Okla. Cr. 279, 253 P. 1037, or from one hand to the hand of another, Stevens v. State, 38 Okla. Cr. 43,

258 P. 1074, for Tit. 37 O. S. 1951 §1, requires the transportation to be from place to place or from one locality to another, and a home is said to be one place. But it is also the settled law in this jurisdiction that the conveyance of intoxicating liquor from one point on the highway to another point on the same highway is a conveyance from place to place within the statute, Standerfer v. State, 75 Okla. Cr. 15, 128 P. 2d 238, and that the distance which the liquor is transported is immaterial, Powell v. State, 83 Okla. Cr. 194, 174 P. 2d 929; Shirley v. State, 31 Okla. Cr. 174, 237 P. 627; Leach v. State, 94 Okla. Cr. 56, 230 P. 2d 492, and it does not have to be a fixed point, Trent v. State, 93 Okla. Cr. 112, 225 P. 2d 191.

While it would seem that counsel in the abstract, recognizes the principles of law just stated he points out a statement by Armstrong, J., for the court in Munn v. State, 5 Okla. Cr. 245, 114 P. 272, where it is said:

"When an information charges a person with unlawfully conveying whiskey from one point in this state to another point therein, and alleges from a point unknown to some definite point given, and the proof develops that the county attorney did known what point the whiskey was conveyed from, the variance would be fatal."

Counsel argues that this principle of law should be applied herein in that the county attorney knew when preparing the information that the defendant proceeded in his car one mile north along the highway before finally stopped, and that if he conveyed any liquor, the conveyance was for the shorter distance where the liquor was found and being three-fourths of a mile north of the place of beginning.

The statement in the Munn case constituted dicta in that it did not form an issue in the case and the facts developed in the case did not require the application of such principle. No reasons are advanced in support of the principle, nor are supporting citations given. However, the principle has been approved in other cases by this court. But however this may be, the facts here would not justify the application of such principle if we were inclined to do so in that there is no evidence in this case, as heretofore pointed out, showing that the county attorney ever learned until the trial that the liquor was transported three-fourths of a mile, instead of one mile.

The serious argument advanced involved the principle set out in Brown v. State, 18 Okla. Cr. 509, 196 P. 967, and approved in Glass v. State, supra, paragraph one of the syllabus where it is said:

"Where an information for conveying intoxicating liquor from one place within the state to another place therein alleges a removal from one particular place, it is essential to sustain a conviction that the state prove the conveyance as alleged."

In the Brown case, supra, the defendant was found with a load of whiskey about two miles south of Marshall, in Logan county. The information charged defendant with the conveyance of 180 quarts of whiskey from a point on the north line of Logan county to a place two miles south of the town of Marshall. There was no evidence to support the charge other than the statement by defendant made to the officers that he had come from Joplin. No circumstances were brought out to support the admission. It was pointed out in the opinion that the mere admission of defendant that he came from Joplin was not equivalent to admitting that he came from a point on the north line of Logan county. He could have arrived at the point where found from three other directions and may have never on this journey been anywhere on the north line of the county.

In the Glass case the officers saw defendant riding horseback towards his home out of Aylesworth. The officers got in their car and followed at a

distance. The defendant, when he got to his home ahead of the officers dismounted in the rear of the house and entered the back door, and then came out with a small bottle in his hand, and broke it on the wheel of a car parked in the yard, about eight feet from the door. No proof was made that defendant carried the whiskey on his ride to his home. There was no evidence to support the charge in the information that defendant transported the liquor from any other place to defendant's place, or home. Of course, defendant's home being a place, and there being no evidence of transportation from any other place to that point, the variance was fatal.

In the two cases cited there was a total lack of transportation as alleged—even one foot. These cases are readily distinguishable as to facts from the within case, and from what has already been said requires no further exposition.

In the two cited cases, while the proof in each would have supported possession with the possible exception of the Glass case, there was not sufficient proof to support a charge of transportation.

In studying the long list of transportation cases decided by this court, it appears uniformly where there was overwhelming evidence of transportation and of the guilt of the accused, the court has sought to avoid application of technical principles, but where the proof was weak and doubt of guilt of the accused of the crime charged, has at times given the defendant the benefit of technical principles, to the end, as expressed by Judge Barefoot, "that innocent persons may not suffer by application of the statute." Tit. 31 O.S. 1951 §1. Each case must be studied as to the facts developed to understand the application of the principle as espoused and used in the Brown and Munn cases above. After some debate it is our thought that in view of the rule as to variance approved in the Woods, Brashears and Hatley cases, supra, that the principle we have referred to from the Brown and Munn cases, supra, is too broad and we refuse to apply it where the variance complained of could not have misled the defendant or exposed the accused to being put twice in jeopardy for the same offense.

The defendant finally cites two additional cases, one being Moss v. State, 4 Okla. Cr. 247, 111 P. 950, where the information alleged the name of the purchaser of whiskey "unknown", but the proof showed that it was known, and the variance was therefore held fatal, as it would be the same as alleging the sale to have been to John Doe while the proof showed a sale to Richard Roe. It would amount to subterfuge and witholding from the defendant of important information respecting the charge against him which the accusatioin ought to furnish, if known.

The last case cited is Logan v. State, 47 Okla. Cr. 266, 287 P. 1112, where it was held that "allegation of sale of liquor to Lloyd Rigdon was not sustained by proof of sale to F. B. or Floyd Rigdon." The variance, of course, was material, as defendant could have been convicted of a charge of a sale to Lloyd Rigdon and of a sale to F. B. Rigdon or Floyd Rigdon, if it developed that there were two persons of the names in question to whom he sold.

In the within case the evidence is overwhelming that the defendant transported intoxicating liquor from his residence on south Shepard street to another point on said street, and we hold that a variance in estimating the distance to have have been one mile instead of three-fourths of a mile, as developed by the proof, is not a material variance under the facts peculiar to this case.

The judgment on the verdict is hereby affirmed.

BRETT, P. J., and JONES, J., concur.